UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DEMARLYN STEWART, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:19CV638 SNLJ |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Demarlyn Stewart, a person in federal custody. On February 8, 2018, Stewart plead guilty before this Court to the offense of Transporting and Receiving a Firearm or Ammunition in Interstate or Foreign Commerce with Intent to Commit a Felony. On May 2, 2018, this Court sentenced Stewart to the Bureau of Prisons for a term of 120 months. Stewart's § 2255 motion, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

**I.     PROCEDURAL HISTORY**

On July 26, 2017, a federal grand jury charged Stewart in a one-count indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g) ("Count One"). *United States v. Demarlyn Stewart*, 4:17CR340 SNLJ ("Criminal Case"), DCD 1.[1] Defendant waived pretrial motions on January 22, 2018. DCD 31.

---

[1] All citations to the District Court Docket refer to the Criminal Case unless otherwise indicated.

### A.     Guilty Plea

During the underlying criminal case, the Assistant United States Attorney and counsel for Stewart concluded that Stewart qualified as an Armed Career Criminal under Title 18, United States Code, § 924(e)(1), and was, therefore, subject to a fifteen year mandatory minimum sentence under the statute. Change of Plea Hearing Transcript ("Plea Tr."), pp. 4. Based on that conclusion, and because of the unique circumstances in the case, the United States agreed to file a Superseding Information which charged Stewart with Title 18, United States Code, § 924(b). DCD 35. Because the new charge would not subject Stewart to the implications of the Armed Career Criminal statute, the parties agreed to jointly recommend ten years imprisonment at the time of sentencing. On February 8, 2018, Stewart appeared before the Court for a change of plea hearing, which contemplated that same negotiation. DCD 39. Pursuant to a Guilty Plea Agreement (the "Agreement"), in exchange for Stewart's voluntary plea of guilty to Count One of the Superseding Information, the United States agreed to dismiss the Indictment at the time of sentencing. DCD 310, ¶ 2.

The Agreement provided, and Stewart agreed, that the United States would prove the following, among other, facts "beyond a reasonable doubt" if the case were to proceed to trial:

> On June 12, 2017, while conducting interdiction at the Amtrak Station in the City of St. Louis, in the Eastern District of Missouri, officers observed defendant Demarlyn Stewart sleeping on a train and blocking the walkway with his foot. Officers woke him up and asked defendant Stewart if he would speak with them, which he answered, "Yes." Defendant then

> consented to a search of the backpack. Officers found a semi-automatic handgun .380 Bersa. Clothes in the bag were consistent with defendant's build. A ticket with defendant's name on it was also in the bag. Defendant was found to have been previously convicted of a felony offense, punishment for which exceeded one year in prison. Defendant was traveling to Illinois and intended to possess the firearm there, where such possession would have been punishable by a term of imprisonment exceeding one year by virtue of Defendant's prior felony convictions.
>
> The pistol was submitted for testing. The pistol was test fired and functioned as designed. The expert found that the pistol could expel a projectile by the action of an explosive and is, therefore, a "firearm" as defined under federal law.

DCD 39, ¶ 4.

With respect to application of the United States Sentencing Guidelines ("U.S.S.G."), the parties agreed that the Base Offense Level is found under Section 2K2.1(a). *Id.* at ¶ 6(a)(i). Finally, the parties recommended that:

> two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

DCD 39 at 4. The parties did not make a recommendation for the Total Offense Level. *Id.* at ¶ 6(c).

In the Agreement, Stewart agreed to "waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea." *Id.* at ¶ 7(a)(i). Similarly, Stewart agreed "to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 18, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel." *Id.* at ¶ 7(b).

The Agreement further provided:

> The Defendant is fully satisfied with the representation received from defense counsel. The Defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the Defendant has requested relative to the government's case and any defenses.

*Id.* at ¶ 9. Finally, Stewart represented in the Agreement that "no person has, directly or indirectly, threatened or coerced [him] to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty." *Id.* at ¶ 10.

During the change of plea hearing, and while under oath, Stewart again advised that he was satisfied with his counsel's representation and there was nothing that he wanted him to do that counsel had failed or refused to do. Plea Tr., pp. 6-7. Stewart also confirmed that the facts set forth in the Agreement and recited by the United States during the hearing were true and correct. *Id.* at 14. At the conclusion of the hearing, the Court accepted the Agreement, finding that Stewart was entering into the plea voluntarily and intelligently and that the plea contained a factual basis containing all the elements of the crimes to which he was pleading guilty. *Id.* at 15.

### E.     The Presentence Investigation Report

Thereafter, the United States Probation Office issued its Presentence Investigation Report ("PSR"). DCD 41. With a criminal history category of VI, the PSR calculated Stewart's guidelines range of imprisonment to be 77-96 months. *Id.* On April 17, 2018, Stewart filed his acceptance of the PSR's application of the U.S.S.G. DCD 42.

### F.     Sentencing

Stewart appeared for sentencing before the Court on May 2, 2018. DCD 50. Stewart raised no objections and then confirmed he had no further objections to the PSR. Sentencing Transcript ("S. Tr.") p. 2. The Court then adopted the findings of fact and legal conclusions

4

contained in the PSR, resulting in a guidelines range of 77-96 months imprisonment. *Id.* at 3. Ultimately, this Court sentenced Stewart to 120 months imprisonment by way of an upward variance to be followed by a term of three years supervised release. *Id.* at 8.

### G. Section 2255 Motion

On February 4, 2019, Stewart filed the instant motion for post-conviction relief. Civil Case, DCD 1. Specifically, Stewart argues that: 1) defense counsel ineffectively induced him to plead guilty by allegedly telling him "the Feds would pick an all white jury from small towns outside of St. Louis . . ." and that the "Feds do not do fingerprints" after he requested fingerprint analysis on the firearm; and 2) counsel was ineffective for failing to object to the Government's breach of agreement to award a third point for acceptance of responsibility. Stewart also filed an amendment to his motion, DCD 14, which this Court permitted.

### II.   PRINCIPLES GENERALLY APPLICABLE TO SECTION 2255 MOTIONS

In general, to state a claim for relief under Title 28, United States Code, Section 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962). The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction. *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964).

Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Instead, a Section 2255 cause of action is intended only to correct an error which rises to the level of a "fundamental

5

defect" which "inherently results in a complete miscarriage of justice." *Hill*, 368 U.S. at 427.

"A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless 'the motion and the files and the records of the case conclusively show that [he] is entitled to no relief.'" *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008)). In determining whether a petitioner is entitled to an evidentiary hearing, the court must consider "[a] petitioner's allegations . . . as true and a hearing should be held unless they are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief." *Garcia v. United States,* 679 F.3d 1013, 1014 (8th Cir. 2012). The court need not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). No hearing is required when "the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Watson v. United States*, 493 F.3d 96, 963 (8th Cir. 2007).

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to Section 2255. *DeRoo v. United States*, 233 F.3d 919, 925 (8th Cir. 2000). Claims alleging ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [the movant] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout*, 961 F.2d 113, 115 (8th Cir. 1992)). This analysis contains both a performance and prejudice prong:

> Under the performance prong, the court must apply an objective standard and "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance," *Strickland*, 46 U.S. at 690, while at the same time refraining from engaging in

6

>hindsight or second-guessing of trial counsel's strategic decisions. *Id*. at 689.
>
>Assuming the performance was deficient, the prejudice prong "requires proof 'that there is a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different.'"

*Lawrence*, 961 F.2d at 115 (quoting *Strickland*, 466 U.S. at 694). Failure to satisfy both prongs is fatal to the claim. *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997) (holding there is no need to "reach the performance prong if [the court] determine[s] that the defendant suffered no prejudice from the alleged ineffectiveness"); *see also DeRoo*, 223 F.3d at 925.

With respect to the first prong, in evaluating counsel's conduct, the court should avoid "the distorting effects of hindsight," *Strickland*, 466 U.S. at 689; and "try to evaluate counsel's conduct by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (quotation omitted). A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (quoting *Strickland*, 466 U.S. at 689). Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if that strategic decision proves unwise. *Strickland*, 466 U.S. at 690. Whether a court agrees with a defense counsel's strategy or analysis is not the test to be followed. *Rodela-Aguilar*, 596 F.3d at 464 (citing *Wing v. Sargent*, 940 F.2d 1189, 1191-92 (8th Cir.1991)).

A court, however, may not need to determine whether a movant meets the "performance" prong of the *Strickland* test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998); *see also Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (holding if the defendant makes an insufficient showing on one component, the court need not address both components), *cert. denied*, 531 U.S. 829 (2000).

7

With regard to the second prong, the movant also must show that the outcome would have been different had the alleged defect been corrected. This showing must include an analysis of the probability that the relief would have been granted by the Court. *See DeRoo*, 223 F.3d at 925 (if there is no reasonable probability that the motion would have been successful, movant cannot prove prejudice); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (stating that resolution of the prejudice inquiry will depend largely on the likelihood of success if the alleged error were corrected).

### III.     ANALYSIS

####    A.    Ground One: Ineffective Assistance of Counsel For Inducing Stewart to Plead Guilty.

In his first ground for post-conviction relief, Stewart argues he received ineffective assistance when his counsel told him the United States would select an "all white jury" and that "the Feds don't do fingerprints." Civil Case, DCD 1-1, p. 6. Specifically, Stewart asserts that defense counsel told him that the "Feds do not do finger prints" [sic] after Stewart requested the police do a fingerprint analysis of the firearm. *Id.* at 9-10. As a result of counsel's advice, Stewart argues he did not believe he would be able to exercise his Sixth Amendment right to an impartial jury to present evidence in his favor, and, thus, he pleaded guilty. *Id.* at 6.

However, Stewart has failed to satisfy either prong of the *Strickland* test. The allegation that defense counsel made these alleged statements regarding voir dire or fingerprinting, is refuted by the record. At no time in the plea colloquy did Stewart give any indication that there was an issue as to advice of counsel or any issue with statements from counsel regarding voir dire or fingerprinting. Stewart was further advised of his trial rights during the plea and made no issue of counsel's alleged advice on the matter. The plea colloquy was as follows:

> THE COURT: With that in mind I'll ask you, are you satisfied with the way your lawyer

>has handled your case?
>
>STEWART: Yes, sir.
>
>THE COURT: Has he investigated the case to your satisfaction?
>
>STEWART: Yes, sir.
>
>THE COURT: Has he done everything you've asked him to do then?
>
>STEWART: Yes, sir.
>
>THE COURT: No gripes or complaints whatsoever?
>
>STEWART: No, sir.
>
>THE COURT: By pleading guilty you're giving up your right to trial by jury. Are you sure that's what you want to do?
>
>STEWART: Yes, sir.
>
>THE COURT: If we were to have a trial you would be presumed innocent. The government would have to prove you guilty beyond a reasonable doubt and you would not have to prove your own innocence. Understand?
>
>STEWART: Yes, sir.

Even if counsel did make these statements to Stewart, defense counsel's failure to request fingerprint analysis or his advice on the voir dire process was not outside the range of professionally competent assistance. Indeed, defense counsel waived the filing of motions to suppress evidence in exchange for a plea deal which vitiated the possibility of a 15 year sentence that the defendant had previously qualified for under the Armed Career Criminal statute. Furthermore, defense counsel cannot be ineffective for failing to make a meritless argument as a matter of law. *Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994). The evidence in the case did not include fingerprint analysis. Further, as is often the case, once a firearm has been test-fired, it is pointless to conduct fingerprint analysis because any previous prints on the firearm have been changed.

9

> THE COURT: If we were to have a trial the government would have to bring its witnesses into court to testify in your presence. Your lawyer would be allowed to cross-examine those witnesses. And of course you could take the witness stand yourself and testify and tell your side of the story and you could call witnesses in your own behalf. You know all that too, don't you?
>
> STEWART: Yes, sir.
>
> THE COURT: And if we were to have a trial and you decided not testify, no one could force you or make you testify against yourself. And if you decided not to testify, the jury would not be allowed to hold it against you that you decided not to testify. Understand all that?
>
> STEWART: Yes, sir.
>
> THE COURT: So with all that in mind I'll ask you again, are you sure you want to give up your right to have a jury trial by pleading guilty?
>
> STEWART: Yes, sir.

P. Tr., pp. 6-8.

Ultimately, Stewart cannot show that "his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." DeRoo, 223 F.3d at 925. Stewart cannot establish prejudice because he cannot prove a reasonable probability exists that, but for counsel's alleged errors, the result of a potential trial would have been different. Stewart asserts that but for the failure of counsel to advise him differently regarding the voir dire process and fingerprint analysis, there is a reasonable probability he would not have pleaded guilty and would have proceeded to trial. However, because there is no reasonable probability that different advice or fingerprint analysis would have been successful, Stewart cannot prove prejudice. Stewart fails to show how he would have been successful at trial.

    **B.    Ground Two: Ineffective Assistance of Counsel For Failing To Move For The Third Point of Acceptance of Responsibility**

In his second ground for relief, Stewart argues defense counsel was ineffective in failing

10

to object to the government's failure to move for a third point in acceptance of responsibility. This argument is moot, as Stewart received three points for acceptance of responsibility pursuant to the Plea Agreement and the sentencing guidelines in the case.

With respect to application of the United States Sentencing Guidelines ("U.S.S.G.") the parties recommended that:

> two levels should be deducted pursuant to Sentencing Guidelines Section 3E1.1(a) because Defendant has clearly demonstrated acceptance of responsibility. If the deduction pursuant to Sentencing Guidelines Section 3E1.1(a) is applied, then the United States moves to deduct one additional level pursuant to Sentencing Guidelines Section 3E1.1(b)(2), because Defendant timely notified authorities of the intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

DCD 39 at 4. The Final PSR contemplated Stewart should receive three points for acceptance of responsibility. Doc. 43, ¶¶ 27, 28. In adopting the guidelines contemplated in the PSR, the Court conducted a colloquy with the United States, which included the following:

> THE COURT: Any objections or additions or corrections for the Government?
>
> MR. DOWD: No, Your Honor.
>
> THE COURT: The Court then will adopt as its findings of fact the factual statements set out in the Presentence Report, but I'll review with you specifically the *Sentencing Guidelines* calculations. Total Offense Level is 21. Criminal History Category is VI.

S. Tr., p. 3. As stated in the Final PSR, the Total Offense Level was 21 after three points for acceptance of responsibility were subtracted from the Base Offense Level of 24. Doc. 43. Therefore, Stewart's argument is moot where he argues for acceptance points that he has already received.  This Court did indeed award defendant three points for acceptance of responsibility. Stewart's argument is also moot because the parties had an agreed upon sentence, which was irrespective of the guidelines, and Stewart ultimately received the agreed upon sentence of the parties. Because Stewart cannot satisfy either prong of the *Strickland* analysis, this Court will

11

deny Stewart's remaining claim for post-conviction relief.

Finally, in his amendment to the motion, Stewart claims that this Court's sentence of an upward variance from the guidelines was "based on conduct unsupported by the record." This Court, however, explained at length how the upward variance was in fact supported by the record.

## II.     CONCLUSION

For the foregoing reasons, this Court denies Stewart's § 2255 petition, without a hearing.

**IT IS FURTHER ORDERED** this Court will not issue a certificate of appealability because Stewart has not made a substantial showing of the denial of a federal constitutional right.

Dated this 20th day of August, 2020.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE